UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JASON M.,

                                        Plaintiff,

v.                                                            3:20-CV-00862 (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

_____

APPEARANCES:                               OF COUNSEL:

LACHMAN & GORTON                    PETER A. GORTON, ESQ.
  *Counsel for Plaintiff*
P.O. Box 89
1500 E. Main St.
Endicott, NY 13761

U.S. SOCIAL SECURITY ADMIN.        CHRISTOPHER LEWIS POTTER, ESQ.
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury St.
Boston, MA 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>DECISION AND ORDER</u>

Jason M. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial

review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying his application for Supplemental Security Income ("SSI").  (Dkt. No.

1.)  This case has proceeded in accordance with General Order 18 of this Court which sets forth

the procedures to be followed when appealing a denial of Social Security benefits.  Both parties

filed briefs.  (Dkt. Nos. 13, 16.)  Oral argument was not heard.  Pursuant to 28 U.S.C. § 636(c),

the parties have consented to the disposition of this case by a Magistrate Judge.  (Dkt. Nos. 4, 5.)

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and this case is remanded to the Social Security Administration ("SSA") for a *de novo* review.

## I.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born in 1983 and completed high school.  (Administrative Transcript at 195, 230.[1])  He previously worked as a telephone solicitor and tree trimmer, but he has not been employed since 2012.  *Id*. at 66, 219.  Plaintiff lives with his wife and three children.  *Id*. at 38.

Plaintiff has a history of back and ear pathologies requiring surgical intervention.  In January 2014, Plaintiff underwent a left L4 hemilaminotomy, medial facetectomy, and discectomy at L4/5 performed by Daniel D. Galyon, M.D.  *Id*. at 347-48.  In December 2016, Plaintiff was diagnosed with recurrent herniated lumbar disc L4-5 right side, right L5 radiculopathy, and underwent L4-L5 discectomy and right L5 foraminotomy on December 14, 2016.  *Id*. at 344-45.  He also reported mastoid surgeries in 2009 and 2011.  *See id*. at 381.  In February 2018, Plaintiff underwent left revision tympanoplasty and canal wall intact mastoidectomy with tragal cartilage graft and left myringotomy with tympanostomy tube placement performed by Charles Woods, M.D.  *Id*. at 380.  In January 2019, Plaintiff underwent a left tympanoplasty, modified mastoidectomy, meatoplasty, and cartilage graft.  *Id*. at 418.

On January 17, 2017, Plaintiff protectively filed an application for SSI, claiming a disability onset date of January 1, 2012.  *Id*. at 74-75.  He alleged the following disabilities:

---

[1] The Administrative Transcript is found at Dkt. No. 12.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns.  Page references to other documents identified by docket number are to the original page numbers at the bottom of the page instead of the pagination generated by CM/ECF.  Unless noted, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

spinal column stenosis, degenerative disc disease, fractured vertebrae, sciatic nerve, paralysis in right leg, chronic ear infections, vertigo, paranoid personality disorder, bipolar disorder, social anxiety, and posttraumatic stress disorder ("PTSD").  *Id.*  The Commissioner denied Plaintiff's initial application on April 4, 2017, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  *Id.* at 74, 117.

On March 5, 2019, Plaintiff, represented by counsel, appeared at a hearing before ALJ Michael J. Kopicki, during which Plaintiff and a vocational expert testified.  *Id.* at 33-73. Throughout the hearing, Plaintiff appeared in physical distress and reported extreme back pain, right leg numbness, difficulty lifting and bending, and falling spells.  *Id.* at 17, 41, 46-47. Plaintiff typically used a cane to ambulate and reported a need to shift and change positions frequently between sitting and standing to relieve some of the pain.  *Id.* at 60-61, 62-63.  His pain was constant and he needed to lay down during the day.  *Id.* at 47.  He testified he was discharged from pain management with Anne Calkins, M.D., due to missing appointments, *id.* at 48-49, and at the time of the hearing his was taking Tramadol with ibuprofen, Lyrica, Propranolol, and Meloxicam prescribed by his primary care provider, Allan Fernandez, M.D.  *Id.* at 47.

Regarding mental impairments, he reported most of his issues dealt with his incarceration.  *Id.* at 50.  There, he was prescribed various psychotropic medications, which he discontinued due to perceived side effects.  *Id.*  At the time of the hearing, he was depressed and had recently restarted psychiatric counseling.  *Id.* at 36.

The ALJ denied Plaintiff's claim for benefits on May 16, 2019, and the Appeals Council denied Plaintiff's request for review on June 11, 2020.  *Id.* at 1-6, 10-23.  Plaintiff now seeks this Court's review.  (Dkt. No. 1.)

## II.     THE ALJ'S DECISION

In his May 16, 2019, decision, the ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims.  (T. at 10-23.)  *See* 20 C.F.R. § 416.920.  First, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 17, 2017, the application date.  *Id*. at 12.  The ALJ next determined Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, status-post surgery x 2; otitis externa, status-post multiple surgeries; depressive disorder; anxiety disorder; and substance abuse disorder.  *Id*.  Proceeding to step three, he determined Plaintiff does not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  *Id*. at 13-14.

ALJ Kopicki next surveyed the available record evidence and concluded that Plaintiff retains the residual functional capacity ("RFC") to perform a range of light work, with the following limitations:

> he can lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for six out of eight hours with normal breaks; stand and/or walk for four out of eight hours with normal breaks; no more than occasionally climb ramps and stairs, stoop, crouch, crawl, balance, and kneel; never climb ladders, ropes, or scaffolds; needs to avoid concentrated exposure to unprotected heights and dangerous machinery; and he is limited to understanding, remembering, and carrying out simple instructions with no more than occasional contact with the public.

*Id*. at 14-15.  The ALJ then determined Plaintiff was unable to perform any of his past relevant work.  *Id*. at 21.  Considering Plaintiff's RFC, age, education, and work experience, along with the vocational expert testimony, the ALJ determined that an individual with Plaintiff's RFC could perform other jobs that exist in significant numbers in the national economy.  *Id*. at 22.  Thus, the ALJ determined Plaintiff was not under a disability, as defined in the Social Security

Act, from January 17, 2017, through the date of the ALJ's decision. *Id*. at 22-23.

## III.   STANDARD OF REVIEW

In reviewing a final decision of the Commissioner, courts must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision. *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)); *see also Brennan v. Colvin*, No. 13-CV-6338, 2015 WL 1402204, at *10 (S.D.N.Y. Mar. 25, 2015).[2]  "Failure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004).  Accordingly, the reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

If the ALJ applied the correct legal standards, the reviewing court must determine whether the ALJ's decision is supported by substantial evidence. *Tejada*, 167 F.3d at 773; *Bowen*, 817 F.2d at 985.  "Substantial evidence means more than a mere scintilla." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the ALJ's finding as to any fact is supported by substantial evidence, it is conclusive.  42 U.S.C. § 405(g); *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995).

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial evidence inquiry, remand may be appropriate. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).  Remand may accordingly be appropriate

---

[2] "Since the standards for determination of disability and for judicial review in cases under 42 U.S.C. § 423 and 42 U.S.C. § 1382c(a)(3) are identical, decisions under these sections are cited interchangeably." *Donato v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983).  Moreover, "[t]he regulations that govern the two programs are, for today's purposes, equivalent." *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019).

where the ALJ has failed to develop the record, *Klemens v. Berryhill*, 703 F. App'x 35, 38 (2d Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999), adequately appraise the weight or persuasive value of witness testimony, *Estrella*, 925 F.3d at 98; *Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008), or explain his reasoning, *Klemens*, 703 F. App'x at 36-38; *Pratts*, 94 F.3d at 39.

## IV.    THE PARTIES' CONTENTIONS

Generally, Plaintiff contends the ALJ's determination is not supported by substantial evidence because the ALJ failed to properly weigh the opinions of his treating physicians, Dr. Fernandez and Dr. Calkins.  (Dkt. No. 13.)  Plaintiff further argues that after assigning little weight to their opinions, the ALJ impermissibly relied upon his own lay determination of the evidence to construct an RFC that was not supported by any medical opinion, and failed to assess Plaintiff's limitations to lifting, carrying, interacting with others, being off task, attendance, hearing, balancing (vertigo), and needing a cane.  *Id.*  In response, the Commissioner contends the ALJ's decision applies the correct legal standards and is supported by substantial evidence, and further argues any errors were harmless.  (Dkt. No. 16.)

## V.    THE COURT'S ANALYSIS

A claimant's RFC is the most he can do despite his limitations.  20 C.F.R. § 404.1545(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other

limitations which could interfere with work activities on a regular and continuing basis." *Id*. (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Here, Plaintiff raises a host of issues including that the ALJ and improperly weighed the medical opinions, misapplied the treating physician rule, and substituted his lay opinion for medical evidence. (Dkt. No. 13.) As more fully set forth below, this Court finds the ALJ never adequately explained the substantial evidence supporting his conclusion that Plaintiff could meet the lifting and carrying requirements of light work as determined in the RFC and, therefore, the RFC is not supported by substantial evidence and remand is required.

A.    **The ALJ's Evaluation of the Opinion Evidence**

Plaintiff established primary care with Dr. Fernandez in May 2018. (T. at 510.) In February 2019, Dr. Fernandez completed a Questionnaire on account of Plaintiff's "lower back degeneration s/p laminectomy/discectomy." *Id*. at 432-33. Utilizing the check-box form, Dr. Fernandez opined Plaintiff would be off-task more than 33% of the work-day and absent more than four days per month. *Id*. at 432-33. Plaintiff would have good days and bad days. *Id*. at 432. He assessed that in an eight hour workday, Plaintiff could sit for approximately one hour, needed to change positions every 20 minutes, and could stand/walk up to seven hours. *Id*. at 433. He opined Plaintiff could occasionally lift up to five pounds but never lift greater amounts.

*Id*.  The ALJ afforded little weight to Dr. Fernandez's treating source opinion stating:

> This opinion is not supported by the evidence of record and is
> speculative.  For example, there is little evidence in the record
> supporting that claimant would be off-task or would miss work.
> It is not clear why the claimant would have such extreme sitting
> limitation but could otherwise stay on his feet all shift.  This source
> did not provide a detailed supporting rationale or identify specific
> supporting findings.  This opinion in also inconsistent with the
> observations and opinions of the claimant's back specialist.

*Id*. at 19.

Plaintiff received pain management from Dr. Calkins from January 2017 through May 2018.  *Id*. at 317-20, 435-60.  In October 2017, Dr. Calkins completed a medical source statement on account of Plaintiff's chronic low back pain, right leg numbness, back muscle spasm, and radiculopathy.  *Id*. at 364.  She opined that in an eight hour workday Plaintiff could walk up to two hours, stand up to two hours, had no limit sitting, should never bend, and needed to change positions every 10 to 15 minutes.  *Id*.  She limited Plaintiff to lifting/carrying less than 10 pounds.  *Id*.  The ALJ also assigned Dr. Calkins' opinion little weight because:

> This opinion is a checklist form and does not provide any
> supporting rationale or reference to supporting findings.  This
> degree of limitation is also inconsistent with the contemporaneous
> treatment notes, which showed improved objective findings
> following the surgery.  This degree of limitations is also not
> entirely consistent with the claimant's reported activities of daily
> living and the need to change positions every 10 to 15 minutes is
> speculative and without supporting evidence in the record.

*Id*. at 19-20.

Dr. Woods submitted a questionnaire dated January 18, 2019.  *Id*. at 392-93.  Although he did not complete the entire form, he opined Plaintiff would be off task 10% or less and absent one day or less per month.  *Id*.  In response to questions about pain, fatigue, and diminished concentration, Dr. Woods responded "intermittently" and to a question about "good and bad

days" he responded "occasional." *Id*. Even though Dr. Woods did not list any conditions or a diagnosis, the ALJ assumed the opinion was based on Plaintiff's ear pathology and ultimately assigned the opinion little weight because it "did not provide a function-by-function assessment or a detailed supporting rationale." *Id*. at 20.

In an encounter note dated December 18, 2018, Dr. Galyon opined Plaintiff had a disability status of 25-50% and did not need further surgery. *Id*. at 463. The ALJ assigned Dr. Galyon's opinion great weight:

> Although not functional by function I give this source great weight in view of his specialty and because he provides a rationale for his conclusion. He explained that he provide[d] such a disability status because of the claimant's near normal neurological exam. Specifically he noted negative straight leg raises, good strength in the legs and no evidence of recurrent disc on MRI. While not articulated along the lines of exertional categories recognized by Social Security, I find this opinion consistent with a range of light work. If one were to conclude that the absence of a rating would allow for all work, a 25% to 50% status should allow for light work at a minimum.

*Id*. at 20.

Mary Anne Moore, Psy.D., performed a consultative psychiatric evaluation of Plaintiff on March 9, 2017. *Id*. at 351. Prior to the examination, Plaintiff reported a history of difficulty sleeping, depression, PTSD symptoms including nightmares and flashbacks, crying easily, loss of energy, diminished sense of pleasure, irritability, excessive worry, restlessness, panic attacks, palpitations, sweating, breathing difficulty, trembling, chest pain, large groups setting off panic attacks, manic symptoms, seeing shadows out of the corner of his eye, hearing voices especially while falling asleep, paranoia, and poor memory and concentration. *Id*. at 352-53. Physically, he reported having "a hard time dressing, bathing, and grooming himself" and relied on his wife for assistance. *Id*. at 355. He would do a "little bit of cooking, cleaning, laundry, and shopping"

but physically it was "difficult", and he lacked energy. *Id*. He reported that he got along with family, and that he watched movies and television, colored with his child, went to physical therapy twice per week, and went to a church dinner two nights per week. *Id*.

Plaintiff's mental status examination was significant for restlessness and poor judgment, but he had cooperative behavior, adequate manner of relating socially, appropriate eye contact, adequate expressive and receptive language, coherent and goal directed thought processes, full range of affect, and intact attention and concentration. *Id*. at 354. His posture was slouched, and he used a cane to ambulate. *Id*. Plaintiff's memory was mildly impaired, his cognitive functioning was average to below average, his general fund of information was appropriate, and his insight was fair. *Id*. His judgment appeared poor with continued mood swings, angry outbursts, depression, and anxiety. *Id*. at 355. He was guarded. *Id*.

Dr. Moore diagnosed Plaintiff with PTSD, bipolar II disorder with psychotic features, panic disorder, personality disorder with antisocial and paranoid features, and found Plaintiff's psychiatric issues may "significantly interfere with [his] ability to function on a daily basis." *Id*. at 356. Based on her examination, Dr. Moore opined:

> The claimant shows no limitation with regard to understanding, remembering, or applying simple directions and instructions, moderate limitation with regard to understanding remembering, and applying complex directions and instructions, using reason and judgment to make work-related decisions, moderate to marked limitation with regard to interacting adequately with supervisors, coworkers, and the public, sustaining an ordinary routine and regular attendance at work, as well as regulating emotions, controlling behavior, and maintaining wellbeing. No limitations with regard to sustaining concentration performing a task on a consistent pace. Moderate limitation with regard to maintaining personal hygiene and appropriate attire and awareness of normal hazards and taking appropriate precautions.

*Id*. at 355. She recommended that Plaintiff receive consistent psychological and psychiatric

treatment and substance abuse treatment. *Id*. at 356. The ALJ assigned Dr. Moore's opinion

substantial weight:

> This source was able to examine the claimant and provided a
> detailed rationale. This opinion [is] also generally consistent with
> the treatment notes of record. However, the limitation to a marked
> limitation in interacting with others is not entirely consistent with
> the evidence of record or the claimant's reported activities of daily
> living. Additionally, the assessed residual functional capacity
> takes into account consideration the claimant's limited mental
> health treatment course and mostly normal objective findings.

*Id*. at 19.

K. Lieber-Diaz, Psy.D., a state agency psychological consultant, reviewed Plaintiff's

then-current medical records and issued a mental RFC assessment on April 4, 2017. *Id*. at 82-85.

Based upon that review, Dr. Lieber-Diaz opined Plaintiff "retains the ability to perform entry-

level, unskilled work on a sustained basis in a setting that has limited contact with others." *Id*. at

85. The ALJ also assigned this opinion substantial weight because of Dr. Lieber-Diaz's program

knowledge and detailed supporting rationale. *Id*. at 20. "Additionally, this source explicitly took

into consideration the claimant's generally limited mental health treatment course and normal

mental status findings. This opinion is also generally consistent with the opinion of the

consultative examiner and the contemporaneous treatment notes." *Id*.

There is no treating source mental health opinion nor was a physical RFC opinion

submitted by an examining or reviewing state agency physician.

**B.      Substantial Evidence Does Not Support the Exertional Requirements of
         Plaintiff's RFC**

As noted above, the ALJ determined that, subject to certain limitations, Plaintiff had the

RFC to perform a range of light work as defined in 20 C.F.R § 416.967(b) and could lift and/or

carry 20 pounds occasionally and 10 pounds frequently.[3] (T. at 14-15.) Under this regulation, to be capable of light work, the evidence must indicate that the individual can lift up to but "no more than 20 pounds at a time" and frequently lift or carry "objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). Although it is a close call given the deference afforded to the Commissioner, this Court finds that the ALJ's RFC determination is not supported by substantial evidence because the evidence upon which the ALJ relies does not, without further explanation or clarification, demonstrate Plaintiff can lift/carry 20 pounds occasionally and 10 pounds frequently.

### 1.      Legal Standards

In making a disability determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3. Under 20 C.F.R. § 416.927(e), some issues are not "medical issues," but are "administrative findings." The responsibility for determining these issues belongs to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2. These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

In terms of weighing opinion evidence, the Second Circuit has long recognized the treating physician rule set out in 20 C.F.R. § 404.1527(c).[4] "Thus, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques

---

[3] Frequent" means occurring from one-third to two-thirds of the time, while "occasionally" means occurring from very little up to one-third of the time. *See* SSR 83-10, 1983 WL 31251, at *5-6.

[4] Although the SSA has since revised its regulations to eliminate the treating physician rule, the rule applies in this case because the application for benefits was filed before March 27, 2017.

and is not inconsistent with the other substantial evidence in [the] case record." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess*, 537 F.3d at 128). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case "the ALJ must explicitly consider, inter alia: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). "Where an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196 (GTS/WBC), 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)), *report-recommendation adopted by* 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017).

After considering these factors, the ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129) (alteration in original). "The failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id.* (quoting *Burgess*, 537 F.3d at 129-30). However, remand is not warranted if "a searching review of the record assures [the Court] that the substance of the treating physician rule was not traversed." *Estrella*, 925 F.3d at 96; *accord Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Remand is unnecessary . . . where application of the correct legal standard could lead to only one conclusion.").

An ALJ is "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole" and, as such, may resolve disputes between

conflicting evidence.  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).

However, an ALJ may not "substitute his own expertise or view of the medical proof for the

treating physician's opinion, [though] the ALJ may choose between properly submitted medical

opinions."  *Heaman v. Berryhill*, 765 F. App'x 498, 500 (2d Cir. 2019) (summary order)

(internal citations and quotation marks omitted); *see also Balsamo v. Chater*, 142 F.3d 75, 81 (2d

Cir. 1998).  In making an RFC finding, an ALJ need not cite to any specific evidence or lack

thereof so long as the requirements for the RFC finding is reasonably inferable from substantial

evidence.  *See Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 78-79 (2d Cir. 2018)

(summary order).  *Burgess*, 537 F.3d at 127-28.

## 2.   Application

This Court cannot discern, from the evidence in the record or the ALJ's explanation of

his decision, which evidence supports an inference that Plaintiff has the ability to lift 20 pounds

on occasion or to frequently lift 10 pounds.  In his decision, the ALJ relies on the opinion of Dr.

Galyon, set forth in the December 18, 2018, encounter note, that Plaintiff had a disability status

of 25-50% and did not need further surgery.  (T. at 20, 463.)  As set forth above, the ALJ stated:

> "Although not functional by function I give this source great
> weight in view of his specialty and because he provides a rationale
> for his conclusion.  He explained that he provide[d] such a
> disability status because of the claimant's near normal neurological
> exam.  Specifically he noted negative straight leg raises, good
> strength in the legs and no evidence of recurrent disc on MRI.
> While not articulated along the lines of exertional categories
> recognized by Social Security, I find this opinion consistent with a
> range of light work.  If one were to conclude that the absence of a
> rating would allow for all work, a 25% to 50% status should allow
> for light work at a minimum."

*Id*. at 20.  This conclusion is troubling because Dr. Galyon, while a neurosurgical specialist, does

not opine as to Plaintiff's ability to lift, carry, stand, walk, sit, and use his arms and hands, which

are necessary activities for light work.  *See* 20 C.F.R. § 416.967(c); SSR 83-10, 1983 WL 31251, at *6.

The Court agrees with Plaintiff that, at the very least, this vague assessment, even if it was properly afforded great weight, does not amount to substantial evidence in support of the ALJ's conclusion that Plaintiff can meet the lifting/carrying demands of light work as modified in the RFC.  (*See* Dkt. No. 13 at 12.)  Rather, as to Plaintiff's ability to lift and carry, the record evidence suggests Plaintiff's upper limit is 9 pounds.  (*See, e.g.*, T. at 364 (Dr. Calkins opining Plaintiff can lift/carry 0-9 pounds), 433 (Dr. Fernandez opining Plaintiff can occasionally lift up to 5 pounds), 61 (Plaintiff testifying that he "struggle[s]" lifting/carrying a gallon of milk).)[5]  For this sole reason, this Court concludes that substantial evidence does not support an RFC assessment of light work.

This Court recognizes the deference that is required to be afforded to an ALJ's decision, particularly in resolving conflicting evidence and that "it is not the function of the reviewing court to reweigh the evidence."  *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)); *see*

---

[5] While the ALJ assigned the treating opinions of Drs. Fernandez and Calkins little weight, the ALJ's decision did not specifically address Dr. Fernandez's lifting/carrying restriction and did not even mention Dr. Calkins' lifting/carrying limitations.  (*See* T. at 19-29.)  Some meaningful discussion as to why the ALJ disagreed with these limitations is imperative for the Court to make a well-informed determination as to whether the RFC is supported by substantial evidence, particularly where the RFC requires lifting and/or carry 20 pounds occasionally and 10 pounds frequently.  *Id.* at 14-15.  *See, e.g.*, *Matthews v. Comm'r of Soc. Sec.*, No. 1:17-cv-00371-MAT, 2018 WL 4356495, at *3 (W.D.N.Y. Sept. 13, 2018) ("The ALJ's failure to explain his assessment of this portion of Dr. Baskin's opinion prevents the Court from meaningfully reviewing his decision, and warrants remand.").  While the ALJ may "choose between properly submitted medical opinions," he may not "set his own expertise against that of physicians who submitted opinions." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (summary order) (citation omitted).  The ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review.

*Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("[W]e defer to the Commissioner's resolution of conflicting evidence."). However, for there to be substantial evidence supporting the ALJ's RFC finding, there must be at least some evidence from which this Court can find an inference that Plaintiff can perform the lifting and carrying requirements of an exertional category. *Trepanier*, 752 F. App'x at 78-79. Here, the Court cannot make such a conclusion. *See, e.g., Ostrom v. Comm'r of Soc. Sec.*, No. 7:14-CV-00268 (MAD/ATB), 2015 WL 1735097, at *10 (N.D.N.Y. Apr. 16, 2015) (finding ALJ's determination regarding plaintiff's ability to lift and/or carry was not supported by substantial evidence, where ALJ rejected the only medical opinion regarding plaintiff's capacity for lifting and/or carrying, and merely referenced the "clinical findings" and "diagnostic images" as the basis for her findings); *see, e.g., Zak v. Saul*, No. 1:18-CV-00724 CJS, 2020 WL 967031, at *9 (W.D.N.Y. Feb. 28, 2020) ("[I]t is unclear how the ALJ found that Plaintiff can perform the lifting and carrying requirements of light work, since there seems to be no indication that she can lift 20 pounds or frequently lift or carry 10 pounds. Plaintiff testified that she can only lift and carry a gallon of milk with difficulty, by bracing it against her chest.").

Although under certain circumstances, particularly where the medical evidence shows relatively minor physical impairment, "an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment," *House v. Astrue*, No. 5:11-CV-915 (GLS), 2013 WL 422058 at *4 (N.D.N.Y. Feb. 1, 2013) (internal quotation omitted), this Court concludes that those circumstances are not present here.[6] *See, e.g., Tricic v. Astrue*,

---

[6] *See Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-110 (2d Cir. 2020) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity. . . . Here, the treatment notes were in line with the ALJ's RFC determinations."); *Corbiere v. Berryhill*, 760 F. App'x 54,

No. 6:07-CV-9997 (NAM)(GHL), 2010 WL 3338697, at *3-4 (N.D.N.Y. Aug. 24, 2010

(remanding based on lack of medical evidence to support the ALJ's findings "regarding the

amount of weight plaintiff could lift and carry"); *Laureano v. Comm'r of Soc. Sec.*, No. 1:17-

CV-1347, 2018 WL 4629125, at *43-44, 2018 WL 4629125 (S.D.N.Y. Sep. 26, 2018) (reversing

finding that plaintiff could perform medium work because the record was devoid of specific

findings regarding plaintiff's ability to lift); *see also Sinopoli v. Berryhill*, No. 18-CV-6558,

2019 WL 3741051, at *10 (S.D.N.Y. May 31, 2019) ("[T]here is no indicator that 'intact

strength' means that Plaintiff can carry and lift 20 pounds.").

Moreover, to the extent the ALJ relied on Plaintiff's December 18, 2018, "near normal

neurological exam" including negative straight leg raises, good strength in the legs, and no

evidence of recurrent disc on MRI, to support the lifting and carrying for light work, Dr.

Galyon's office notes from November 15, 2018, found posterior tenderness, antalgic gait,

moderate pain with range of motion, left leg parathesis, leg weakness, and positive straight leg

raise at 45 degrees, while a lumbar x-ray showed "demonstration of degenerative disc disease at

L4-5." *Id*. at 464, 465.  Further, Dr. Calkins' treatment notes also find significant pain, loss of

feeling, weakness in the lower extremity, diffuse lumbar tenderness, numbness, tingling, joint

tenderness, and decreased range of motion, *id*. at 455-58, 519, 521, 532, while Dr. Fernandez's

treatment notes, including an office visit after Dr. Galyon's December 18, 2018, examination,

indicated tenderness to the paraspinous muscles of the lumbar spine and decreased range of

motion of low lumber spine.  *Id*. at 517, 525, 550.  "Although the ALJ is not required to

reconcile every ambiguity and inconsistency of medical testimony, [he] cannot pick and choose

---

56 (2d Cir. 2019) (affirming the Commissioner's final decision despite the lack of a medical
opinion expressly discussing plaintiff's physical limitations and relying on plaintiff's treatment
notes to formulate the RFC).

evidence that supports a particular conclusion." *Noviello v. Comm'r of Soc. Sec.*, No. 18-CV-5779 (PKC), 2020 WL 353152, at *7 (E.D.N.Y. Jan. 21, 2020) (citation omitted); *Clarke v. Colvin*, No. 15-CV-354, 2017 WL 1215362, at *9 (S.D.N.Y. Apr. 3, 2017) (finding it "improper" for an ALJ to "selectively rel[y] on evidence that weighed against a finding of a disability"); *April B. v. Saul*, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) ("ALJ must not ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence but the Court will not reweigh the evidence that was before the ALJ.") (citations, internal quotation marks, and brackets omitted).

Relatedly, without further explanation, the ALJ stated, "If one were to conclude that the absence of rating would allow for all work, a 25% to 50% disability status should allow for light work at a minimum." (T. at 20.) "Athough an RFC determination is an issue reserved for the Commissioner, the ALJ is a layperson, and as such is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Anderson v. Comm'r of Soc. Sec.*, No. 19-CV-464, 2020 WL 5593799, at *3 (W.D.N.Y. Sept. 18, 2020) (internal quotation marks omitted). "In other words, an ALJ's ability to make inferences about the functional limitations caused by an impairment does not extend beyond that of an ordinary layperson. While an ALJ may render common sense judgments about functional capacity, [he] must avoid the temptation to play doctor." *Duncan v. Comm'r of Soc. Sec.*, No. 18-CV-369, 2020 WL 1131219, at *2 (W.D.N.Y. Mar. 9, 2020) (internal quotation marks and brackets omitted).

Accordingly, the Court finds that the ALJ's RFC assessment is not supported by substantial evidence and remands for further administrative proceedings.

C.      **Plaintiff's Remaining Arguments**

Because remand is required, the Court declines to reach Plaintiff's remaining arguments. *See, e.g.*, *Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach remaining arguments where the court had already determined remand was warranted); *Hamilton v. Astrue*, No. 5:11-cv-954 (GLS), 2012 WL 5303338, at *3 (N.D.N.Y. Oct. 25, 2012) ("Because [plaintiff's] remaining arguments are contingent upon the ALJ's resolution of the foregoing issue on remand, the court need not address them."); *Morales v. Colvin*, No. 13-CV-06844, 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *report-recommendation adopted by* 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED** that the decision of the Commissioner is **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper explanation of the consideration of the evidence and any other further proceedings, consistent with this Decision and Order.

Dated: March 28, 2022
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge